

**FILED & ENTERED**

**AUG 29 2019**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** wesley    **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Tabitha A. Joiner<br><br>Debtor(s). | Case No.: 2:12-bk-28682-BB<br><br>CHAPTER 11<br><br>**ORDER RESOLVING AMOUNT OF ARREARAGES ON SECURED AND UNSECURED CLAIMS OF BANK OF NEW YORK MELLON AND CONTINUING HEARING ON DEBTOR'S MOTION FOR FINAL DECREE AND CASE STATUS CONFERENCE**<br><br>Date:      August 28, 2019<br>Time:     11:00 AM<br>Courtroom: 1539 |

The Court conducted a continued hearing on the motion of reorganized debtor Tabitha A. Joiner (the "Debtor") for a final decree in the above chapter 11 case (the "Case") on August 28, 2019 at 11:00 a.m. in Courtroom 1539 of the above-entitled Court.  Appearances were as noted on the record at the time of the foregoing hearing (the "Hearing").

It having come to the Court's attention that disagreements had arisen between Bayview Loan Servicing, LLC, in its capacity as servicing agent for The Bank of New York Mellon fka The Bank of New York, ("Lender") and the Debtor as to (1) whether and to what extent the Debtor had fallen behind on the payments due Lender on account of its secured claim under her confirmed plan of reorganization (the "Plan") and (2) how much remains unpaid under the Plan on account of the Lender's unsecured claim; the Court having reviewed and considered the declarations and arguments submitted by the Debtor and the Lender concerning the foregoing issues (the "Issues"); and the Court having determined that it would be imprudent to enter a final decree in the Case unless and until the Issues have been resolved; the Court hereby resolves the Issues, as follows:

1. **Unsecured Claim**: The payments due the Lender over the life of the Plan on account of the Lender's unsecured claim total $7,498.17, of which the Debtor has paid $2,573.17, leaving a balance due the Lender under the Plan on account of the Lender's unsecured claim of $4,925;[1]

2. **Secured Claim**:

    a. There are three instances reflected on the Lender's annotated version of the Debtor's chart of payments [Exhibit "A" to Docket No. 235] in which the Lender claims that the Debtor's calculations overstate the amount of a payment by the following amounts: $15 on January 7, 2016; $6.40 on February 10, 2016; and $26.44 on June 14, 2016;

    b. For each of the three instances described in the preceding subparagraph, during the course of the Hearing, the Debtor showed counsel for the Lender documentation from her bank

---

[1] The Court will enter a separate order addressing the manner in which the Debtor must make payments on account of the Lender's unsecured claim in response to the Lender's motion for reconsideration of this Court's order disallowing the unpaid balance of its unsecured claim.

evidencing that the amount of the payment she made pursuant to her bank's online bill pay service was accurately reflected on her chart [Docket No. 234], and the Court finds that the Debtor should be given credit for the larger amounts shown on the Debtor's chart with regard to these three payments;

c. The Debtor contends that, on August 23, 2019, she made through her bank's online bill pay service an additional payment of $2,800 on account of the Lender's secured claim that was too recent to be included on Docket No. 234 (the "Payment in Transit");

d. As of the date of the Hearing, the Lender did not have any record of having received the Payment in Transit;

e. The Debtor acknowledged on the record at the time of the Hearing that the first payment reflected on Docket No. 234 – a payment of $1,000 on August 6, 2019 – had been stopped before it was transmitted to the Lender and that this amount should therefore be deducted from the total payments reflected on her chart;

f. The Lender's schedule of payments, Exhibit C to Docket No. 235, reflects a payment of $1,750 made on June 30, 2017, which was not, but should have been, included among the payments listed on the Debtor's chart;

g. Once the corrections/adjustments referenced in paragraphs 2(a), 2(b), 2(e) and 2(f) (collectively, the "Payment Amount Adjustments") have been made to the party's respective schedules of payments, both parties' calculations reflect that,

not including the Payment in Transit, as of the date of this order, the Debtor has paid a total of $160,337.88 on account of Lender's secured claim;

    h.  *According to the Lender's calculations*, including the payment due for August, 2019, as of the date of this Order, the Debtor should have paid a total of $165,570.63[2] under the Plan on account of its secured claim, with the result that, according to the Lender's calculations, after the Payment Amount Adjustments are made, the balance due as of this date from the Debtor should be $5,232.75 (or $2,432.75, if and when the Payment in Transit is received);

    i.  *According to the Debtor's calculations*, after the Payment Amount Adjustments have been made, the Debtor should owe additional payments to the Lender on account of its secured claim as of the date of this order of $501,80, if and when she is given credit for the Payment in Transit, or $3,301.80 before the Payment in Transit is received;

    j.  The discrepancy between the parties' respective calculations as to the balance currently due from the Debtor on account of the Lender's secured claim is $1,930.95 (the "Spread");

    k.  The Spread consists of two components:  (i) a difference of $590.87 arising from the fact that the Debtor in certain months paid less than the Lender contends was due for escrow deposits

---

[2] The Lender has advanced certain funds for taxes and insurance payments (the "Advances") for which it has not yet received reimbursement through the deposits or escrow payments that the Debtor is required to make each month. The balance reflected in paragraph 2(h) may not include the total amount of the Advances made to date by the Lender.  This figure only includes the portion of the Advances that, as of this date, the Debtor would have repaid to the Lender if the Debtor had made all of the monthly payments and escrow deposits due the Lender as of the date of this order on account of its secured claim.  There is insufficient evidence in the record for the Court to determine at this time, and the Court does not determine at this time, how much if any of the Advances remains unpaid as of this date.

(the "Escrow Shortfall"); and (ii) miscellaneous charges assessed by SPS, Bayview's predecessor as loan servicer, totaling $1,340.08 (the "SPS Charges");

l. Based on the offer of proof made at the time of the Hearing by counsel for Lender, the Court finds that $308.40 of the SPS Charges were for late fees and interest on Advances and that these amounts are properly included in the Court's determination of the balance due Lender on account of its secured claim; however, the balance of the SPS Charges ($1,031.68[3]) does not appear to have been warranted and should therefore be excluded from the calculation of this balance;

m. Based on the evidence submitted by the Lender, the Court finds that it is appropriate to include the Escrow Shortfall in the determination of the balance due on account of the Lender's secured claim;

n. Therefore, to determine the correct amount due Lender on account of its secured claim as of the date of this order, the balance calculated by the Debtor, $501.80 (or $3,301.80 if the Payment in Transit is not received) must be increased by the amount of the Escrow Shortfall ($590.87) and $308.40 of the SPS Charges, producing a total balance due of $1,401.07, if the Payment in Transit is received, and a total due of $4,201.07, if the Payment in Transit is not received;

---

[3] This amount consists of charges of $212.24 and $623.40 on January 15, 2016 and November 28, 2016, respectively, for a "principal reduction" that appear to have been merely the application of credit balances in debtor's favor due to earlier overpayments that should not increase the total amount due from Debtor, and a miscellaneous adjustment of $196.04 on November 28, 2016 for which SPS provided no explanation.

      o. The same figure can be derived from the Lender's balance calculations referenced in paragraph 2(h) above in the following manner: the balance of $5,232.75 (before application of the Payment in Transit) must be reduced by the disallowed portion of the SPS Charges ($1,031.68), producing a balance as of the date of this order on account of Lender's secured claim of $4,201.07, or $1,401.07 after application of the Payment in Transit;

      p. **Based on the foregoing, the Court finds that Debtor owes on account of the Lender's secured claim as of the date of this order, a total of $1,401.07, provided the Payment in Transit is received, and a total of $4,201.07 if the Payment in Transit is not received**; and

3. **Future Payments**:

      a. The parties agreed on the record at the time of the Hearing that, from and after September 1, 2019, unless and until this amount changes in accordance with the Lender's restructured loan agreement, the amount of the Debtor's monthly payment will be a payment of principal and interest of $2,093.60 and an escrow deposit of $671.40, for a total monthly payment of $2,765; and

      b. The Debtor may continue to use her bank's bill payment service to make payments on account of the Lender's secured claim, but, whenever she makes a payment, either through bill pay or by some other means, she shall send written evidence of that payment (such as a printout from her online banking service) to counsel for Lender, Edward G. Schloss, Esq., at 3637 Motor Avenue, Suite 220, Los Angeles, CA 90034.

-7-

In light of the foregoing,

**IT IS HEREBY ORDERED** as follows:

1. The Debtor shall make the regular monthly payments due the Lender on account of its secured claim from and after September 1, 2019 in a timely manner.

2. The Debtor shall pay the outstanding balance due the Lender on account of its secured claim as expeditiously as possible.

3. The Court will conduct a continued hearing on the Debtor's motion for a final decree and a continued case status conference in the Case on October 3, 2019 at 10:00 a.m. in Courtroom 1539 of the above-entitled Court.

4. The Debtor shall not be required to file a written status report in connection with the October 3, 2019 hearing unless there are issues that the Debtor would like the Court to resolve at that continued hearing, in which event the Debtor shall file and serve not later than September 19, 2019 one or more declarations under penalty of perjury setting forth any such issues, her position with regard to such issues and all evidence that the Debtor may have that would assist the Court in resolving these issues.

5. Not later than September 26, 2019, the Lender may file and serve a response to any papers filed by the Debtor and, if it so desires, a written statement, supported by one or more declarations under penalty of perjury, setting forth any issues or concerns that it may have relating to or arising out of the status of the Case or the Debtor's request for entry of a final decree.

###

Date: August 29, 2019

Sheri Bluebond
United States Bankruptcy Judge